## CONSPIRACY TO BURN A BUILDING.

[Circuit Court of Fulton County.]

GEORGE HUTCHINSON v. THE STATE OF OHIO.

Decided, January, 1906.

*Arson—Sufficiency of Indictment Therefor—Ownership of the Property
—Procurers and Abetters of the Offense—Evidence of Official Sten-
ographer—Presumption as to Accuracy of Stenographic Notes—
Presumption that Trial Judge did not Err—Proof of a Conspiracy—
Conversations with Co-conspirators.*

1. An indictment for arson properly charges the ownership of the prop-
   erty when the owner named is the holder of the legal title.
2. Where a building to which a wife held the legal title was set on fire
   and burned under circumstances indicating guilty complicity of the
   husband, and there is no evidence that she had any connection
   with the crime; an indictment charging him with arson is proper,
   rather than one charging him with intent to defraud an insurance
   company, although such may have been his intent.
3. One who aids, abets, or procures the burning of a building may be
   prosecuted as a principal offender.
4. Where an official stenographer testifies from her stenographic notes,
   the presumption, the absence of evidence to the contrary, is that the
   trial judge determined she was using them for a purpose legally
   competent.
5. If the court permitted a stenographic report of testimony taken in a
   previous trial to be read in evidence, a transcript thereof should be
   deemed to be in evidence, with the privilege to the opposite party
   of examining it and cross-examining upon it.
6. Inasmuch as an official stenographer is an officer of court and under
   oath accurately to report the testimony offered, query whether a
   presumption does not arise in the absence of evidence to the con-
   trary, that the report so made is accurate.
7. Where there is proof of a conspiracy between the defendant and S
   to burn a building, the testimony of P to the effect that in further-
   ance of the conspiracy he was employed by S to do the act, is com-
   petent as a part of the *res gestae*, even if it involves a statement
   of S to P implicating the defendant.
8. The proof required to establish a conspiracy for such a purpose is
   not proof beyond a reasonable doubt, but such proof as fairly raises
   a presumption or inference of a conspiracy.

* Motion for leave to file petition in error in Supreme Court over-
ruled on February 20, 1906.

WILDMAN, J.; PARKER, J., and HAYNES, J., concur.

In the case of George Hutchinson against the State of Ohio, the plaintiff in error brings the case here for the purpose of a reversal, if his contentions are correct, of a judgment of conviction in the court of common pleas of this county. He was tried and convicted upon an indictment charging him with arson, said to have been committed on the 10th day of August, 1896, in the burning of property of Rebecca Hutchinson who, it is agreed, was the wife of the plaintiff in error here, the defendant below.

Several grounds are urged upon the court as reasons for setting aside the verdict below and reversing the judgment therein. In the limited time at our disposal we shall not be able to discuss at great length the various propositions made. Our attention has been especially invited in argument to the following claims:

That the indictment does not correctly describe the offense which was disclosed by the evidence, if any offense at all was so shown.

That the court erred in permitting the introduction of evidence upon the trial, and especially the testimony of John Page as to a certain conversation or certain conversations said by him to have been had between him and one Swisher, in the absence of the defendant below.

That the ownership of the property was not correctly described in the indictment, it being therein alleged as owned by Rebecca Hutchinson, when, as contended, it should have been charged as being owned by a man named Holden, otherwise called Nicely, who, at the time of the destruction of the building, was its tenant.

That the court erred in permitting the introduction of the testimony of the witness Nellie Brown, an official stenographer of the court, it being claimed that she read from her stenographic notes of the testimony given upon a former trial, or a part thereof.

That the court erred in permitting the evidence as to the amount of the insurance which had been taken out and was in force upon the building at the time of the fire.

And generally, that the verdict is not sustained by the evidence.

Some of these questions seem to us very substantial and important, and one or two others of almost equal difficulty, though based rather upon technical rights, perhaps, than really substantial ones.

Without tarrying too long upon the form of the indictment, it is sufficient to say that we think the indictment properly charges the ownership of the property in Rebecca Hutchinson. The testimony discloses that the title was *prima facie* in her and that Holden, or Nicely, by whatever name you call him, occupied the property simply as her tenant. Whether or not the indictment might have charged the ownership as in Nicely, we think that it was entirely proper to charge it as in the person who held the legal title.

A more important question is that raised by the contention as to whether it was proper to charge the defendant with being guilty of arson in the destruction of the property of another, instead of charging him under another section of the statute for burning property with intent to defraud an insurance company. We think it very clear that the defendant could not properly be charged as burning his own property with intent to defraud an insurance company. He was not the owner of the property. Whether or not he might have been indicted and tried under the section of the statute referred to, Revised Statutes, Section 6832, upon the basis of the other statute that one who aids, abets or procures another to commit a crime may be prosecuted and punished as the principal offender, it is not necessary for us now to determine. There is no evidence that we have discovered in a very careful examination of the bill of exceptions that his wife, Rebecca Hutchinson, procured the defendant to set this building afire. So that without regard to the form of the indictment, it can hardly be contended that there would be sufficient justification under the evidence here for the claim that he aided and abetted his wife in the destruction of the property, or that she conspired with him or he with her for the setting fire to her building for the purpose of defrauding an insurance company. We think he was properly indicted under the statute which punishes the burning the property of another—Section 6831, Revised Statutes.

The contention of the state as to the facts is that Hutchinson, the husband of the owner, for the purpose of defrauding an insurance company, because it is not disguised that that was his motive if he entered into this transaction, employed one Swisher to burn or cause to be burned the building in question; that Swisher employed John Page to do the same thing, and that Page, connecting with himself a man named English, did the direct act of destroying the building. It is not contended that Page himself set fire to the building, but he entered according to the claims into so close connection with the transaction that it may fairly be said that he was one of the two committing the overt act, that is to say, he carried English in his vehicle to the place where the building was destroyed, taking with him at the same time some coal oil; that he was present when shavings were prepared and placed against the building, and that, although he went away a short distance, he came back before the building was destroyed and then took English away with him. We think it may fairly be said that the destruction of the property was directly caused by these two men—Page and English. It does not appear that either Hutchinson or Swisher took any active part in the transaction itself. The testimony tends to show that Hutchinson and Swisher procured the two men who directly caused the fire, and the question then arises as to whether Hutchinson was properly indicted as a principal offender. It is contended with great earnestness that he should have been indicted for aiding and procuring another to do the act; that he should not have been charged with the burning of the building directly. And some cases have been cited in support of this proposition; among them the case of *Chidester* v. *State*, 25 Ohio St., 433. In a case decided by this court in 1890, while Judges Scribner, Haynes and Bentley were upon the bench and were sitting in the case, this question was touched upon and to some extent discussed. The case is the somewhat famous one of *Lydia Devere* v. *State of Ohio*. Lydia Devere was convicted and sent to the penitentiary upon the charge of forging and uttering forged paper. And it is said that Lydia Devere is the same person who within the memory of all of us—at a very recent date— was tried and convicted for violation of law under the name of

Cassie Chadwick. Without stopping to read the case, it is sufficient to say that she was indicted for forgery and, I believe, uttering forged paper. The case is reported in 5 Circuit Court Reports, 509. I read from the language of Judge Bentley' on page 531:

"It is also said by counsel for defendant that she could not be convicted under the second count of the indictment for uttering this note, and *Brown* v. *State,* 18 O. S., 508; *Chidester* v. *State,* 25 O. S., 438, and certain English reports, are cited in support of that position. At the time that the cases in the 18 O. S. and 25 O. S; were decided, the section of the statute bearing upon the subject was different in form from the provisions that existed at the time of the transaction in question here. Section 6804 now reads, as it did not then: 'Whoever aids, abets, or procures another to commit any offense, may be prosecuted and punished as if he were the principal offender.' Since the other decisions were made, the Supreme Court in *Hanoff* v. *State,* 37 O. S., 178, have construed this section, and have given particular emphasis to the word 'prosecuted' as appearing therein; so that it is now held, by the provisions of this section, that the indictment may charge an aider and abettor as if he were the principal offender, the word 'prosecute' being broad enough to have reference to the form of the indictment itself. So that whatever objection might have been taken in this line prior to the amendment of Section 6804 is no longer tenable."

Motion for leave to file petition in error to the Supreme Court was by that court overruled.

The case of *Hanoff* v. *State,* 37 Ohio St., 178, should be read in this connection. It is our view that the indictment was properly drawn under the section of the statute providing that aiders, abettors and procurers may be prosecuted as principal offenders.

We come then to the questions raised during the trial of the case as to the admission of the evidence:

The testimony of Nellie Brown, stenographer, contains certain references to the notes which she had taken upon the trial of Swisher, who was himself prosecuted for his complicity in this alleged crime. It is not said in the introduction of this testimony that she was giving the contents of any writing, that she was reading from her stenographic notes, or any transcript thereof; but she was asked the direct question as to what was testified to

on the former trial, and her answer was given to that question. Objection was made to her reading from the notes. Nothing was said by the court below as to whether his observation led him to the judgment that she was reading from the notes, or whether she was testifying from her recollection of the testimony on the former trial, refreshing herself by an examination of her own notes. Later she was asked the question as to whether all that she had read was from her official notes taken on the former trial, and she answered in the affirmative. But it nowhere directly appears that the testimony which was first objected to was read from the notes, and in considering whether or not the court below erred, presumption must be permitted in favor of the record below. In other words, the court is not presumed to have erred; he saw the witness; he could determine for himself whether she was testifying from memory or from a reading of the notes which were in her hands, and we are not disposed to hold, under the circumstances, that error was committed by the court in this respect.

There is another principle which may possibly apply to the consideration of this question. That is, the extent to which the rule of the Supreme Court in the case of *Moots* v. *State*, 21 Ohio St., 653, and *Shriedley* v. *State*, 23 Ohio St., 130, should apply. Those cases recognized the propriety of permitting in evidence in the one case a record, in the other certain check slips made by a witness for the purpose of preserving the information of some transaction where the memory of the witness would be likely to fail, and although in each of these cases the witness may have testified that he ·had no recollection of the transactions the memory of which was so sought to be preserved, the writings were permitted as original evidence in lieu of the memory of the witness. In the case of *The Pennsylvania Co.* v. *Trainer, Admr.,* 12 Circuit Court Reports, 66, the Circuit Court of the Seventh Circuit held:

"Where it is claimed a witness who testified upon a former trial has changed his testimony, an official stenographer who took the testimony at the former trial, who produces his notes in short hand of the testimony of the witnesses, may read his notes to the jury as affecting the testimony of the witnesses, if he remembers

that at the time the testimony was correctly taken, and that the notes contain all the testimony of such witness, although at the time he is called upon to testify he has no independent recollection of what the witness did testify.''

That is the syllabus; whether it was prepared by the judges or by a reporter, I do not know. On page 69, Judge Frazier, announcing the opinion of the court, says:

''Counsel for defendant in error cite a number of authorities in support of the proposition that the notes of a stenographer, like other writings made by the witness at the time of the occurrence, can only be used to refresh his memory.''

And then certain quotations are made from one or two works and the judge adds:

''It has long been an established rule of evidence that a witness who has made entries in a book or reduced to writing facts which he is required to do in the regular order of his employment, on the day they purport to have been made, though he has now no independent recollection of the facts mentioned in it, if he remembers that at the time, he knew the facts were correctly stated, may be permitted to use it to refresh and assist his memory; but the writing itself must be produced in court, in order that the other party may, by cross-examination, have the benefit of the witness refreshing his memory by every part. The American courts have carried the rule farther than it has been carried in England, by admitting the writing itself to go in evidence to the jury in all cases where it was made by the witness at the time it occurred, for the purpose of preserving the memory of it, if, at the time of testifying, he can recollect nothing further than that he had actually reduced the whole transaction to writing. 1 Greenleaf on Evidence, Section 437 and note 3 to 12th edition; *Moots* v. *The State*, 21 Ohio St., 653; *Shriedley* v. *The State*, 23 Ohio St., 130.

''If entries or writings, made by a person in the performance of a private employment, are admitted in evidence upon the testimony of the person who made them that they are correct, although he has no recollection of the facts, why on principle and reason should not the testimony of a witness taken in shorthand by an officer of the court appointed for that purpose, and whose sworn duty it is to correctly report the testimony, be admitted when it is competent to prove it, although the officer at the time of testifying has no independent recollection of what the witness testified.

"The violent changes effected in the modes of procedure by the courts in the last few years, the progress of science, the startling and violent inroads effected by the telegraph, the telephone, the phonograph, the application of electricity as motive power and to other purposes with the application of photography in evidence, and the employment of court stenographers, have placed the line of relevancy far beyond what would be recognized by the courts of even twenty years ago.    *    *    *

"A recent author says: 'At the present time the custom of employing a court stenographer, whose duty it is to take down the testimony of the witnesses examined, is nearly universal. He is usually a sworn officer of the court, and his notes or transcripts of them possess an official character and authenticity which render them of great value in case of the subsequent death or absence of a witness. Where such records exist, their production on the subsequent trial should, it seems, be required under the rule requiring the production of the best evidence.' Underhill on Evidence, page 171.

"In Rice on Evidence, Vol. 1, p. 399, referring to stenographer's report of the testimony taken upon a former trial by a witness since deceased, says: 'There is no substantial reason why the testimony taken in such trial should not be read. The party was on the stand, and could have been cross-examined, and the same opportunity for scrutiny and for contradiction existed as if the jury had agreed upon a verdict.' "

Tarry but for a moment and consider this case in which Judge Frazier renders the opinion. I may say that it should be remembered that we have a statute permitting the introduction of a stenographic report taken upon a former trial under certain circumstances, where a witness has died or has so departed from the jurisdiction of the court that his oral testimony is not at the time of the trial obtainable. Judge Frazier, after citing another authority in the case, *Bennett* v. *Syndicate Ins. Co.*, 39 Minn., 254, and a text book, 2 Rice on Evidence, 658, says:

"It is a rule of universal application that a party must produce the best evidence within his control, and though the notes of a stenographer may not be the best evidence in the sense that it excludes all others, experience teaches that it is more reliable than unassisted memory, and in practice is consulted with deference by counsel and judges in cases of controversy or doubt as to what a witness said."

Without going further with a consideration of this question or further quotations from this opinion of Judge Frazier, it is enough to say that we think the reasoning by Judge Frazier is worthy of most careful consideration and thought. We do not find it necessary to adopt the principle in this case that wherever an official stenographer presents in court a stenographic report of the testimony of a witness on a former trial whose testimony is sought to be impeached or the testimony of a party on a former trial where admissions of that party would be relevant, that such a stenographic report would be admissible in evidence. I say we are not forced to that conclusion because of the reason which I have already given that it does not affirmatively appear in this case that the stenographer read to the jury the particular part of the testimony which was objected to. If the stenographer did read it to the jury, that was equivalent to offering it in evidence to the jury. If the court permitted it, the stenographic report or transcript thereof would in that case be deemed to be in evidence so that the opposite party had opportunity for examination of it and cross-examination upon it. We think that no error is apparent in the admission of the testimony of Nellie Brown, the official stenographer. Before leaving this branch of the case it might be properly added that the statute itself for the appointment of stenographers requires that they shall take an oath accurately to report the testimony, and we have a principle well recognized in the courts that an officer will not be presumed to have failed in the performance of a duty. There is no presumption, in other words, that the report taken by an official stenographer, sworn to make an accurate report, is inaccurate. On the contrary, it might, perhaps, properly be held that there is a presumption of accuracy, a presumption that the officer performed her duty, and that without other evidence or without her statement that she had correctly reported the testimony, the court in the absence of any evidence of inaccuracy might permit it to go to the jury. It is not, however, necessary for us in this case to go that length. I simply submit the matter as a query.

Did the court err in the very important matter of admitting the testimony of John Page as to what had been said to him by

Swisher, including the statement by Swisher, in substance, that he had been employed by Hutchinson to commit this crime?

*Clawson* v. *State,* 14 Ohio St., 234, was cited by one of the counsel for plaintiff in error in support of the proposition that on the trial of a defendant charged with crime, evidence of the declarations of a conspirator for the commission of such crime, made in the absence of the accused, is not admissible to prove either the body of the crime or the existence of the conspiracy, unless they either so accompany the execution of the common criminal intent as to become a part of the *res gestae* or in themselves tend to further the execution of the common criminal intent.

Assuming for the moment the existence of the conspiracy and dealing with the question as to how far the testimony of one conspirator may be used against another, it may be said in response to this contention of counsel for plaintiff in error and the citation of the case referred to, that if Swisher was a co-conspirator with Hutchinson, if Swisher had been employed by Hutchinson to destroy this building under such circumstances as would make it a crime, the whole conversation which Swisher had with Page was surely in furtherance of the conspiracy, because he was simply causing by means of that conversation the destruction of the building; he was employing another to carry on the work, and in doing that he was telling that other the occasion for it, who was employing him to do it. We are not quite disposed to go so far as to hold that the statement in that conversation by Swisher of what had been said to him by Hutchinson could be taken as affirmative evidence of the statements by Hutchinson; but we do hold that if there was sufficient proof to justify the introduction of the testimony as to the conversation at all, I mean if there was adequate proof of the conspiracy between Swisher and Hutchinson, that then this conversation was necessarily and properly shown as one of the links in the chain of causation, the ultimate result of which was the destruction of the building in violation of law. Without that there would be a missing link in the chain; the chain would be broken, and it could hardly be said that Hutchinson had caused the fire. This was a passing along by sequence of events the act of Hutchinson in first pro-

curing, if he did procure, Swisher to commit the crime. It was passing it on, and every transaction from Hutchinson to English would be competent in evidence as bearing upon the original cause of the ultimate effect.

We think that that evidence was properly admitted. The effect of it, and the effect of every part of it, was a question for subsequent consideration, and no request appears to have been given to the court for instruction to the jury that they could not consider the statement of Swisher to Page as evidence of what Hutchinson had said to Swisher. If the evidence was properly admitted, and if the use of it was to be restricted as simply having the effect of passing along the act to furnish the link in this chain of causes, in other words, of employing Page to go on with the transaction and carry it to a conclusion, I say if it was to be so restricted, it would have been proper for counsel to ask the court for a specific instruction to that effect and for the court to have given it; but no such request seems to have been made; at least, our attention has been called to none, and no exception was taken to any action of the court in refusing.

An effort was made by counsel to eliminate this evidence in its entirety from consideration by the jury, and we think that the request in that direction was by the court properly refused. But was Swisher a conspirator with Hutchinson so that testimony was properly admissible as to the statements and acts of Swisher in furtherance thereof? Up to the time of the introduction of this testimony the evidence to support the charge of conspiracy was very slight, if there was any at all. The evidence upon this subject was introduced in substance, after the court had made its ruling permitting Page to testify to what Swisher had said to him. There is no arbitrary rule as to the order in which evidence shall be introduced upon the trial of a cause; this matter must rest largely in the discretion of the trial court. Ordinarily, it would unquestionably be better before the testimony as to statements of a claimed conspirator is admitted that adequate evidence should be given of the conspiracy; but we think that there was no abuse of discretion on the part of the court in permitting this evidence to come in, if it was finally made competent by sufficient evidence of a conspiracy.

What is sufficient evidence of a conspiracy? Evidence to satisfy the court beyond a reasonable doubt that a conspiracy exists is not required. It is sufficient if a conspiracy is established by *prima facie* evidence, evidence which makes a *prima facie* case, which fairly raises a presumption or inference of a conspiracy; and in this case we are not disposed to differ with the court below that there was sufficient evidence to justify the inference that these men had formed a combination for the purpose of committing a crime, the crime charged in the indictment. It is true that a large part of the evidence comes in the form of the testimony of men who were themselves conniving at or taking part in this criminal offense. Their evidence should be received with caution; and the court properly instructed the jury as to the caution with which the testimony of an accomplice should be received. But after all, we think that there was such a combination of circumstances here, and there are so many witnesses testifying as to facts bearing in one way and another upon the claimed guilt of this defendant, that we are not disposed to hold that the court erred in the first place in permitting the testimony of Page as to his employment by Swisher to go to the jury.

And along the same line, and upon the vital question as to whether the jury erred in finding this defendant guilty under the evidence which was submitted, we are not disposed to hold that the evidence would not justify a conviction. Twelve men saw the witnesses upon the stand; they heard them testify, and notwithstanding the fact that some of these witnesses were themselves violators of law, still, in view of all the circumstances, the appearance of the witnesses, the manner in which they testified, the many circumstances which are not brought so clearly to our attention as to the attention of the trial judge and the trial jury, the latter found this man guilty of the crime defined in the indictment. Considering the case in its entirety, we have concluded that the judgment of the court below in overruling the motion for a new trial ought not to be disturbed, and the judgment will, therefore, be affirmed.

*Files & Paxson,* for plaintiff in error.

*Handy & Wolf,* for State.